# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC ALETO, | Case No. EDCV 15-0842-RGK (JEM) |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |
| STATE OF CALIFORNIA, et al., | |
| Defendants. | |

On April 29, 2015, Eric Aleto ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Complaint").

On July 23, 2015, the Court issued a Memorandum and Order Dismissing Complaint With Leave to Amend.

On October 19, 2015, Plaintiff filed a First Amended Complaint ("FAC").

In accordance with the provisions of the Prison Litigation Reform Act of 1995, the Court must screen the FAC before ordering service to determine whether the action: (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1).  This screening is governed by the following standards:

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) the plaintiff fails to state a cognizable legal theory; or (2) the plaintiff has

1  alleged insufficient facts under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't,
2  901 F.2d 696, 699 (9th Cir. 1990).  In determining whether a complaint states a claim on
3  which relief may be granted, allegations of material fact are taken as true and construed in
4  the light most favorable to the plaintiff.  Love v. United States, 915 F.2d 1242, 1245 (9th Cir.
5  1988).  However, "the liberal pleading standard . . . applies only to a plaintiff's factual
6  allegations."  Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989).  "[A] liberal interpretation of
7  a civil rights complaint may not supply essential elements of the claim that were not initially
8  pled."  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

9      Although a complaint "does not need detailed factual allegations" to survive
10  dismissal, a plaintiff must provide "more than mere labels and conclusions, and a formulaic
11  recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly,
12  550 U.S. 544, 555 (2007) (rejecting the traditional "no set of facts" standard set forth in
13  Conley v. Gibson, 355 U.S. 41 (1957)).  The complaint must contain factual allegations
14  sufficient to rise above the "speculative level," Twombly, 550 U.S. at 555, or the merely
15  possible or conceivable.  Id. at 557, 570.

16      Simply put, the complaint must contain "enough facts to state a claim to relief that is
17  plausible on its face."  Twombly, 550 U.S. at 570.  A claim has facial plausibility when the
18  complaint presents enough facts "to draw the reasonable inference that the defendant is
19  liable."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  This standard is not a probability
20  requirement, but "it asks for more than a sheer possibility that a defendant has acted
21  unlawfully."  Id.   A complaint that pleads facts that are merely consistent with liability stops
22  short of the line between possibility and plausibility.  Id.

23      In a pro se civil rights case, the complaint must be construed liberally to afford the
24  plaintiff the benefit of any doubt.  Karim-Panahi v. Los Angeles Police Dept, 839 F.2d 621,
25  623 (9th Cir. 1988).  Unless it is clear that the deficiencies in a complaint cannot be cured,
26  pro se litigants are generally entitled to a notice of a complaint's deficiencies and an
27  opportunity to amend prior to dismissal of the action.  Id. at 623.  Only if it is absolutely clear
28

1   that the deficiencies cannot be cured by amendment should the complaint be dismissed

2   without leave to amend.  Id.; Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007).

3        After careful review and consideration of the FAC under the relevant standards and

4   for the reasons discussed below, the Court finds that the FAC must be **DISMISSED WITH**

5   **LEAVE TO AMEND.**

6                                **FACTUAL ALLEGATIONS**

7        Plaintiff's claims arise out of his confinement at the Ironwood State Prison in Blythe,

8   California.  He names as defendants Jeff Beard, Director of the California Department of

9   Corrections and Rehabilitation ("CDCR"), and Edmund G. Brown, Governor of the State of

10   California ("Governor Brown") (collectively, "Defendants").  (FAC at 1.)  Plaintiff sues both

11   Defendants in their official capacities.  (Id.)  Plaintiff seeks only prospective injunctive relief.

12   (FAC at 4-5.)  Plaintiff asserts three claims for relief and alleges the following:

13        Claim One: Governor Brown is violating Plaintiff's Eighth Amendment rights by

14   incarcerating him for actions that Brown acknowledges are the result of his mental illness.[1]

15   (FAC at 1-2.)  Governor Brown acknowledges that Plaintiff's mental illness is treatable, but

16   refuses to provide proper mental health treatment.  (FAC at 2.)   Plaintiff states:

17            Under the [Sexually Violent Predator Act ("SVPA")[2]], Brown is

18            refusing to provide proper mental health care for Plaintiff's mental

19            illness . . . .  Through the [SVPA] Brown acknowledges that he has in

20            place with the Department of Mental Health ["DMH"], both Doctors

21            trained to treat Plaintiff's illness, and Mental Health programs designed

22            to treat and cure Plaintiff's mental illness.

23   ─────────────────────

24      [1]  On August 2, 2013, Plaintiff was found guilty after a jury trial of several charges "related to the
     sexual molestation of a family member under the age of ten years old." (Complaint at 9.)  Plaintiff
25   was sentenced to a total of 50 years to life in state prison.  (Complaint at 9.)

26      [2]  The SVPA, Cal. Welf. & Inst. Code §§ 6600 et seq., provides for the civil commitment of "a
     person who has been convicted of a sexually violent offense against one or more victims and who
27   has a diagnosed mental disorder that makes the person a danger to the health and safety of others
     in that it is likely that he or she will engage in sexually violent criminal behavior."  Cal. Welf. & Inst.
28   Code § 6600(a)(1).

1   (FAC at 2.)  This demonstrates that Governor Brown knows he is violating Plaintiff's Eighth

2   Amendment rights by failing to provide treatment for Plaintiff's mental illness.  (Id.)  Plaintiff

3   seeks an injunction against Governor Brown prohibiting him from "incarcerating Plaintiff for

4   acts that were the result of his mental illness" and requiring him to release Plaintiff from

5   custody and commit him to the DMH for treatment until he is "cured."  (Id. at 4.)

6        Claim Two: Defendant Beard has knowingly violated Plaintiff's Eighth Amendment

7   rights by failing to provide him with mental health treatment.  (FAC at 2.)  "Defendant Beard

8   provides no mental health programs specially and specifically designed to treat" Plaintiff's

9   mental illness, even though it is treatable.  (Id. at 2-3)  Beard provides other types of mental

10  health treatment, but none directed to sexually violent behavior.  (Id.)  Plaintiff seeks an

11  injunction requiring Beard to provide Plaintiff with mental health treatment and programs

12  specifically designed for sexually violent offenders.  (Id. at 4.)

13       Claim Three: Defendant Beard has knowingly violated Plaintiff's Eighth Amendment

14  rights "by housing him on prison yards with prison gang dropouts," which "puts Plaintiff at

15  great risk on a daily basis of being assaulted, stabbed, and extorted out of money."  (FAC at

16  3.)  Thus, Plaintiff lives in "constant fear" of being assaulted or murdered.  (Id.)  Beard, as

17  the Director of CDCR, knows that other prisoners "will attack and murder inmates with

18  charges related to sex crimes."  Despite this knowledge, Beard houses prisoners convicted

19  of sex crimes with prison gang dropouts who target sex offender prisoners.  (Id.)  Plaintiff

20  seeks "an injunction ordering Defendant Beard to stop housing him on prison yards with

21  prison gang dropouts" and to provide Plaintiff with "safe housing" on a yard with only sex

22  offenders.  (FAC at 4-5.)

23                                **DISCUSSION**

24  **I.    CHALLENGE TO FACT OR DURATION OF PLAINTIFF'S CONFINEMENT**

25       As to Claim One, Plaintiff claims that he should not be incarcerated "for actions that

26  are the direct result of mental illness."  (FAC at 1.)  He seeks an order requiring Governor

27  Brown to release him from prison and commit him to the DMH for mental health treatment.

28

1    (Id. at 4.)  Thus, Plaintiff essentially challenges the validity of his conviction and his

2    confinement in state prison.

3           The exclusive method for challenging the fact or duration of a prisoner's confinement

4    is by filing a petition for a writ of habeas corpus.  Wilkinson v. Dotson, 544 U.S. 74, 78

5    (2005); see 28 U.S.C. § 2254(a).  Such claims may not be brought in a section 1983 action.

6    Nor may Plaintiff seek to invalidate the fact or duration of his confinement "*directly* through

7    an injunction compelling speedier release or *indirectly* through a judicial determination that

8    necessarily implies the unlawfulness of the State's custody."  Wilkinson, 544 U.S. at 81

9    (emphasis in original).  A section 1983 action is barred, "no matter the relief sought . . . *if*

10   success in that action would necessarily demonstrate the invalidity of confinement or its

11   duration."  Id. at 81-82 (emphasis in original); see also Heck v. Humphrey, 512 U.S. 477,

12   486-87 (1994) (holding that a plaintiff cannot bring a section 1983 claim if success on that

13   claim would necessarily imply the invalidity of his conviction or sentence" unless that

14   conviction or sentence has been overturned or otherwise invalidated).

15          Here, Plaintiff claims that he should not have been convicted based on actions "that

16   are the direct result" of his mental illness (FAC at 1), and he seeks to be released from

17   criminal custody.  (Id. at 4.)  While a claim for prospective relief often does not call into

18   question the validity of a plaintiff's confinement, see Edwards v. Balisok, 520 U.S. 641, 648

19   (1997), Plaintiff's claims here directly challenge his criminal custody, and he may not bring

20   these claims in a section 1983 action.  Wilkinson, 544 U.S. at 78.  Moreover, Plaintiff does

21   not allege that his convictions were reversed on direct appeal or otherwise called into

22   question or invalidated.  Accordingly, Claim One appears to be barred pursuant to Heck,

23   Edwards, and Wilkinson, unless Plaintiff can plead facts showing that success in this action

24   would not demonstrate the invalidity of his confinement or that his conviction has been

25   reversed, vacated, overturned, or otherwise invalidated.

26   **II.     OFFICIAL CAPACITY SUIT AGAINST DEFENDANTS**

27          Plaintiff has sued each Defendant in his official capacity only.  (FAC at 1.)

28   Defendant Beard is the Director of CDCR, which is an agency of the State of California.

1   Governor Brown is the Governor of the State of California.  "[A]n official-capacity suit is, in

2   all respects other than name, to be treated as a suit against the entity."  Kentucky v.

3   Graham, 473 U.S. 159, 166 (1985).  Thus, Plaintiff's official-capacity claims against

4   Defendants are tantamount to claims against the State.

5       Moreover, a government entity "may not be sued under § 1983 for an injury inflicted

6   solely by its employees or agents.  Instead, it is when execution of a government's policy or

7   custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said

8   to represent official policy, inflicts the injury that the government as an entity is responsible

9   under § 1983."  Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 694

10  (1978).  Thus, "[i]n order to hold [a government entity] liable under § 1983, [Plaintiff] must

11  show (1) that he possessed a constitutional right of which he was deprived; (2) that the

12  [government entity] had a policy; (3) that the policy amounts to deliberate indifference to

13  [Plaintiff's] constitutional right; and (4) that the policy is the 'moving force behind the

14  constitutional violation.'"  Anderson v. Warner, 451 F.3d 1063, 1070 (9th Cir. 2006)

15  (citations and internal quotation marks omitted); Dougherty v. City of Covina, 654 F.3d 892,

16  900 (9th Cir. 2011).  "There also must be a 'direct causal link' between the policy or custom

17  and the injury, and [Plaintiff] must be able to demonstrate that the injury resulted from a

18  'permanent and well settled practice.'"  Anderson, 451 F.3d at 1070 (citation omitted);

19  Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 957 (9th Cir. 2008) (en banc).

20      A plaintiff may maintain a lawsuit against State employees in their official capacities

21  for prospective injunctive relief.  See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71

22  n.10 ("[A] state official in his or her official capacity, when sued for injunctive relief, would be

23  a person under § 1983 because 'official-capacity actions for prospective relief are not

24  treated as actions against the State.'" (quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14

25  (1985))); see also Flint v. Dennison, 488 F.3d. 816, 825 (9th Cir. 2007) ("[A] suit for

26  prospective injunctive relief provides a narrow, but well-established, exception to Eleventh

27  Amendment immunity.").  However, "in an official-capacity suit the entity's 'policy or custom'

28  must have played a part in the violation of federal law."  Graham, 473 U.S. at 166; see also

1   Los Angeles County v. Humphries, 562 U.S. 29, 37 (2010) (the "'policy or custom'

2   requirement [in Monell] applies in § 1983 cases irrespective of whether the relief sought is

3   monetary or prospective."). A plaintiff must allege, as a matter of law, that the policy or

4   custom caused him to suffer constitutional injury. Sadoski v. Mosley, 435 F.3d 1076, 1080

5   (9th Cir. 2006).

6          In Claim Two, Plaintiff seeks an affirmative injunction requiring the CDCR to provide

7   mental health programs and treatment specifically designed to address "sexually violent

8   behavior." (FAC at 3.) In Claim Three, Plaintiff seeks an affirmative injunction requiring the

9   CDCR to stop housing inmates convicted of sex crimes with other "mainline" prisoners,

10  including those "who have dropped out of "active" prison gangs." (Id.) Plaintiff does not

11  allege any specific facts demonstrating that Defendants were acting pursuant to a specific

12  State of California or CDCR policy or custom or that such a policy or custom caused

13  Plaintiff to suffer a constitutional injury. Thus, the allegations of the FAC are insufficient to

14  state a claim upon which relief may be granted against defendants in their official

15  capacities.

16  **III.    EIGHTH AMENDMENT CLAIMS**

17         In addition to alleging facts demonstrating that any constitutional violation was

18  pursuant to an official policy, custom, or practice under Monell, Plaintiff also must allege

19  facts demonstrating the constitutional violation itself. Anderson, 451 F.3d at 1070. In Claim

20  Two, Plaintiff alleges that the lack of appropriate mental health treatment violates the Eighth

21  Amendment. (FAC at 2.) In Claim Three, Plaintiff alleges that housing Plaintiff on a yard

22  with "prison dropouts" and other "mainline" inmates puts him in danger in violation of the

23  Eighth Amendment. (Id. at 3-4.)

24         The Eighth Amendment to the United States Constitution protects prisoners against

25  cruel and unusual punishment. To state a claim under the Eighth Amendment, Plaintiff

26  must show that he is "incarcerated under conditions posing a substantial risk of serious

27  harm," or that he has been deprived of "the minimal civilized measure of life's necessities"

28  as a result of Defendants' actions. Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal

1   quotation marks omitted).  He must also show that Defendants were deliberately indifferent

2   to his needs.  "[D]eliberate indifference entails something more than mere negligence, [but]

3   is satisfied by something less than acts or omissions for the very purpose of causing harm

4   or with knowledge that harm will result."  Id. at 835.  An Eighth Amendment claim requires a

5   plaintiff to satisfy "both an objective standard – that the deprivation was serious enough to

6   constitute cruel and unusual punishment – and [the] subjective standard" of deliberate

7   indifference.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012).

8           Claim Two - Deliberate Indifference to Serious Medical Needs

9           The Eighth Amendment includes the right to adequate medical care in prison, and

10  prison officials or prison medical providers can be held liable if their "acts or omissions

11  [were] sufficiently harmful to evidence deliberate indifference to serious medical needs."

12  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  The right to adequate prison health care

13  includes adequate mental health treatment, and the standards are the same whether the

14  treatment is considered physical or mental.  Doty v. County of Lassen, 37 F.3d 540, 546

15  (9th Cir. 1994).

16          Because society does not expect that prisoners will have unqualified access to

17  health care, deliberate indifference to medical needs amounts to an Eighth Amendment

18  violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  The

19  Ninth Circuit has defined a "serious medical need" in the following ways:

20          failure to treat a prisoner's condition [that] could result in further significant injury or

21          the unnecessary and wanton infliction of pain [;] . . . [t]he existence of an injury that a

22          reasonable doctor or patient would find important and worthy of comment or

23          treatment; the presence of a medical condition that significantly affects an

24          individual's daily activities; or the existence of chronic and substantial pain . . . .

25  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted),

26  overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en

27  banc).

28

A prison official or prison medical provider acts with "deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." Gibson v. Cnty. of Washoe, Nev., 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Farmer, 511 U.S. at 837).

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." Gibson, 290 F.3d at 1188 (citation omitted). However, "whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842; see also Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003) (deliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that defendant actually knew of a risk of harm). In the medical context, a conclusion that a defendant acted with deliberate indifference requires that the plaintiff show both "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-05 (footnotes omitted).

Non-medical prison personnel are generally entitled to rely on the opinions of medical professionals with respect to the medical treatment of an inmate. However, if "a reasonable person would likely determine [the medical treatment] to be inferior," the fact that an official is not medically trained will not shield that official from liability for deliberate indifference. Snow, 681 F.3d at 986; see also McGee v. Adams, 721 F.3d 474, 483 (7th

9

Cir. 2013) (stating that non-medical personnel may rely on medical opinions of health care professionals unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner") (internal quotation marks omitted).

Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (alteration omitted) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (per curiam). A delay in treatment does not constitute a violation of the Eighth Amendment unless the delay causes further harm. McGuckin, 974 F.2d at 1060. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. Toguchi, 391 F.3d at 1061.

As noted above, Plaintiff asserts that Beard (in his official capacity as Director of CDCR) does not provide mental health treatment for sexually violent offenders generally and that "Beard has failed to provide any treatment [whatsoever] for Plaintiff . . . ." (Complaint at 2-3.) Plaintiff has failed to allege facts demonstrating that he has a serious medical need for mental health treatment, that CDCR officials knew of such serious medical need (for example, by Plaintiff requesting such treatment), and that CDCR officials disregarded that need pursuant to an official, policy custom or practice. Accordingly,

Plaintiff has failed to state a claim for deliberate indifference to his serious medical needs in Claim Two.

Claim Three - Deliberate Indifference to Risk of Harm

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of prisoners, including protection from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994). In order to establish an Eighth Amendment claim for failure to protect, an inmate must show: (1) that his incarceration posed a "substantial risk of serious harm," and (2) that prison officials acted with "deliberate indifference" towards him by disregarding an "excessive risk to [his] health or safety." Id.

Although prison official have a duty to "take reasonable measures to protect inmates from violence at the hands of other prisoners," Robinson v. Prunty, 249 F.3d 862, 866 (9th Cir. 2001), they must at least have an opportunity to investigate the credibility of the alleged threat. See Leach v. Drew, 385 Fed. App'x 699, 701 (9th Cir. 2010) (explaining that the "failure of a prison official to respond to a known, credible threat to an inmate's safety constitute[s] a violation of the inmate's Eighth Amendment rights.")

Here, Plaintiff has not alleged that he has actually suffered physical harm by other inmates. Rather, he alleges that he lives in "constant fear" that he may be physically assaulted in the future as a result of being housed in the same yard with "prison gang dropouts" and other "mainline" inmates. (FAC at 3.) Accordingly, he seeks "to be housed on a yard with only sex offenders where he can participate in mental health programs to treat sex offenders." (FAC at 5.) Plaintiff has failed to allege facts sufficient to demonstrate that prison officials have known and disregarded a substantial risk of serious harm to him based on his housing location. For example, he has not stated specific facts demonstrating that he is at risk of assault by other inmates, that he has informed prison officials of this risk, and that they have refused to respond to his requests for a transfer or otherwise address his concerns. There are no facts demonstrating that Defendants acted with a sufficiently culpable state of mind. Rather, Plaintiff merely provides speculative and conclusory

1  assertions regarding the risk to his safety and Defendants' knowledge and intent.

2  Accordingly, Plaintiff has failed to state an Eighth Amendment claim in Claim Three.

3                                  *************

4        For the reasons set forth herein, the FAC is **DISMISSED WITH LEAVE TO AMEND**.

5        If Plaintiff desires to pursue this action, he is **ORDERED** to file a Second Amended

6  Complaint within **thirty (30) days** of the date of this Order, which remedies the deficiencies

7  discussed above.

8        If Plaintiff chooses to file a Second Amended Complaint, it should: (1) bear the

9  docket number assigned in this case; (2) be labeled "Second Amended Complaint"; (3) be

10 filled out exactly in accordance with the directions on the form; and (4) be complete in and

11 of itself without reference to the previous complaints or any other pleading, attachment or

12 document.  The Clerk is directed to provide Plaintiff with a blank Central District of California

13 civil rights complaint form, which Plaintiff must fill out completely and resubmit.

14       **Plaintiff is admonished that, if he fails to file a Second Amended Complaint by**

15 **the deadline set herein, the Court may recommend that this action be dismissed for**

16 **failure to prosecute and failure to comply with a Court order.**

17

18 DATED: December 21, 2015                    */s/ John E. McDermott*

19                                         JOHN E. MCDERMOTT
                                       UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28